# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TALIA HOUSTON | § § § | |
| v. | § § | Civil Action No. 4:17-CV-00035<br>Judge Mazzant |
| DTN OPERATING COMPANY, LLC, THE REPUBLIC AT DENTON, LLC, THE SCION GROUP, LLC, DP FUNDING CORP, KRISTIN KELLER, IN HER CAPACITY AS GENERAL MANAGER OF THE REPUBLIC AT DENTON, LLC, AND RONALD MANNING, IN HIS CAPACITY AS THE RESIDENT SERVICES MANAGER AT THE REPUBLIC AT DENTON, LLC | § § § § § § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss (Dkt. #3). Having considered the pleadings, the Court finds the motion should be granted.

### BACKGROUND

On or about June 2, 2016, Plaintiff Talia Houston and DTN Operating Company, LLC ("DTN"), executed a Housing Agreement to lease a cottage at The Republic at Denton, LLC ("The Republic"), an apartment complex located in Denton, Texas (Dkt. #1 at ¶ 13). Plaintiff noted in the Housing Agreement that she would require a service dog to be with her in her residence. Plaintiff provided The Republic a letter from Jennifer Doeden ("Doeden"), a licensed marriage and family therapist from the Therapeutic Services Agency (Dkt. #1 at ¶ 16–17). The letter stated that Plaintiff had a mental disability and needed an emotional support animal (Dkt. #2, Exhibit E). On August 22, 2016, Plaintiff moved into room 44D at The Republic, with her dog, Jazz (Dkt. #1 at ¶ 18).

On September 8, 2016, Kristin Keller ("Keller"), the General Manager of The Republic, wrote Plaintiff a letter requesting additional documentation regarding Plaintiff's disability and need for a service dog (Dkt. #1 at ¶ 19; Dkt. #2, Exhibit F). On September 13, 2016, The Republic received a second letter from Doeden, which stated that Plaintiff had been under Doeden's care since April 14, 2016, and vaguely explained Plaintiff needed a therapy dog to help her cope with her mental health condition (Dkt. #1 at ¶ 20; Dkt. #2, Exhibit G). Plaintiff also provided The Republic with documentation that she had registered Jazz as an emotional support dog with the United States Animal Registry (Dkt. #1 at ¶ 21; Dkt. #2, Exhibit D).

On September 15, 2016, Ronald Manning ("Manning"), the Resident Services Manager at The Republic, wrote a letter to Plaintiff relaying several noise complaints The Republic received stemming from Jazz (Dkt. #1 at ¶ 22; Dkt. #2, Exhibit H). Later that day, Manning wrote Plaintiff again, informing her that a $200 fine was posted to her account for violating the pet policy by keeping an unregistered animal in her apartment (Dkt. #1 at ¶ 23; Dkt. #2, Exhibit I). The letter also instructed Plaintiff to remove the animal within 24 hours (Dkt. #1 at ¶ 23; Dkt. #2, Exhibit I).

On September 19, 2016, Keller wrote Plaintiff a second letter, stating The Republic would continue to evaluate Plaintiff's request for accommodation, but Jazz had not been approved and would need to be removed from the residence by 5:00 p.m. the next day (Dkt. #1 at ¶ 26; Dkt. #2, Exhibit J). The letter additionally stated that The Republic was also unable to approve her request because of recent complaints from neighbors that Jazz is disruptive and barking continuously, especially periods when the dog was left alone (Dkt. #1 at ¶ 25). The letter also threatened to terminate the Housing Agreement because Plaintiff was in material breach for failing to remove Jazz from the premises (Dkt. #1 at ¶ 26).

On September 21, 2016, Keller sent Plaintiff a three-day notice to vacate, stating Plaintiff had breached paragraphs 10(c), 12, and 18 of the Housing Agreement for not removing Jazz from the premises (Dkt. #1 at ¶ 27; Dkt. #2, Exhibit K). Soon thereafter, Plaintiff vacated the apartment. (Dkt. #1 at ¶ 28). On December 8, 2016, Plaintiff received an email from The Republic informing her she had a balance of $7,410.00, due within two weeks and any unpaid amount would be referred for third-party collection (Dkt. #1 at ¶ 29; Dkt. #2, Exhibit L).

On January 13, 2017, Plaintiff filed her Complaint asserting the following causes of action: (1) violations of the Fair Housing Act, (2) violations of the Civil Rights Act of 1964, (3) violations of the Texas Fair Housing Act, (4) violations of the Texas Civil Rights Act, (5) violations of the Americans with Disabilities Act, (6) violations of the Rehabilitation Act of 1973, (7) violations of the Texas Fair Debt Collection Practices Act, (8) violations of the Texas Deceptive Trade Practices Act, (9) negligence, and (10) constructive eviction (Dkt. #1).

On March 20, 2017, Defendants filed a motion to dismiss under Rule 12(b)(6) (Dkt. #3). On May 1, 2017, Plaintiff filed a response (Dkt. #18). On May 15, 2017, Defendants filed a reply (Dkt. #24). On August 24, 2017, the Court ordered Plaintiff to file an amended complaint by 5:00 p.m. on September 7, 2017 (Dkt. #45). Plaintiff failed to do that and instead filed a deficient Motion for Extension of Time (Dkt. #47), which Plaintiff eventually corrected on September 12, 2017 (Dkt. #50). Although the Court was not required to give Plaintiff another chance to file an amended complaint, on October 2, 2017, the Court granted Plaintiff such relief and ordered Plaintiff to file an amended complaint by 5:00 p.m. on October 4, 2017 (Dkt. #62). To date, Plaintiff has not filed an amended complaint.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.*

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 681. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In determining whether to grant a motion to dismiss, a district court generally may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.*

## ANALYSIS

*Fair Housing Act & Texas Fair Housing Act*

Plaintiff alleges that Defendants are in violation of the Fair Housing Act ("FHA"), 43 U.S.C. § 3604(a), for committing discriminatory housing practices due to her disability. The FHA makes it unlawful to "discriminate against an individual in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a handicap." 42 U.S.C. § 3604(f)(2). Discrimination includes refusing to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The FHA defines handicap as "(1) a physical or mental

5

impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); 24 C.F.R. § 100.201.

Plaintiff alleges that she has a disability and it is medically necessary for her to have a service dog (Dkt. # 1 at ¶ 16). When asked to provide more information in regard to her disability, Plaintiff provided The Republic with a letter from Doeden saying she needed a "Therapy Dog to help her cope with her Mental Health Condition" (Dkt. #2, Exhibit E). Despite Keller's request for more detail regarding Plaintiff's disability and for further documentation from a medical professional familiar with Plaintiff's condition, Doeden merely sent a subsequent letter stating only that Plaintiff has a "mental illness" and, as such, has "certain limitations" (Dkt. #2, Exhibit G). The letter further stated that Plaintiff has been under Doeden's care since April 14, 2016, and that Plaintiff meets "the definition of a disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act of 1973" (Dkt. #2, Exhibit G).

Although Plaintiff claims that The Republic's acts were motivated by her disability, the Complaint is silent as to what her disability is or how this disability substantially affects a major life activity (*See generally* Dkt. #1). Plaintiff presents no medical facts to support her claim that she is disabled. Plaintiff identifies no activity, no less a "major life activity," that she claims to be impaired by her "mental illness" (*See* Dkt. #18 at p. 10–11). Plaintiff's doctor states that Plaintiff meets the definition of disability under the FHA, Americans with Disabilities Act, and Rehabilitation Act, and "[d]ue to mental illness, [Plaintiff] has certain limitations." (Dkt. #2, Exhibit G). This diagnosis may be accurate, but it fails to set forth any facts regarding if or how any of Plaintiff's conditions "substantially limits" a major life activity. *See Thomas v. Salvation Army*, 841 F.3d 632, 639 (4th Cir. 2016) (holding that the plaintiff's complaint was

6

deficient despite providing that she received care from a behavioral health organization, had an appointment with the doctor, and was on medication, because the complaint failed to adequately identify her mental disability); *Miles v. Housing Authority Texarkana, TX*, No. 5:15CV37-JRG-CMC, 2016 WL 47927, at * 3 (E.D. Tex., Jan. 5, 2016) (holding that the plaintiff failed to establish she was disabled under the FHA when she alleged she had mental, emotional, and psychological disorders that pose "great obstacles in her life and which affects her moods and ability to comprehend"); *Barfield v. Plano Housing Authority*, No. 4-11-cv-00206, 2012 WL 3135892, at *5 (E.D. Tex. July 6, 2012) (holding that the plaintiff failed to create a genuine issue of fact when the complaint did not state what his disability was or how the defendants failed to accommodate it). Therefore, Plaintiff's cause of action under the FHA is dismissed with prejudice.

Furthermore, the Texas Fair Housing Act ("TFHA"), Tex. Gov. Code § 301.001, et. seq.*,* provides "rights and remedies substantially equivalent to those granted under federal law." *Chavez v. Aber*, 122 F.Supp. 3d 581, 601 (W.D. Tex. 2015). The language of "§§ 301.025(a), 301.025(b), and 301.025(c)(2) of the TFHA is nearly identical to the language of §§ 3604(f)(1), 3604(f)(2), and 3604(f)(3)(b) of the federal FHA." *Id*. Therefore, because Plaintiff has failed to state a claim under the FHA, her claims are similarly insufficient under the TFHA and, therefore, dismissed with prejudice.

*Civil Rights Act of 1964/Civil Rights Act of 1871*

To clarify any confusion, Title VII of the Civil Rights Act of 1964 is codified at 42 U.S.C. § 2000e-2 and prohibits employment discrimination on the basis of an individual's "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2. The Americans with Disabilities Act adopts the enforcement powers, remedies, and procedures set forth in Section 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, with regard to employment disability discrimination. 42 U.S.C.

7

§ 12111 et seq.; 42 U.S.C. § 12117. This case does not involve discrimination within the employment context, thus, that statute is inapplicable in this case.

Section 1983 of the Civil Rights Act of 1871 is codified at 42 U.S.C. § 1983 and provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law. 42 U.S.C. § 1983. Section 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). The color of law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). In rare cases, the state can "so dominate[ ] [private] activity as to convert it to state action." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009).

The Republic is a private student housing center. Here, Plaintiff alleges that The Republic was acting under the color of state law because it receives federal funds, operates as state and local government housing, and most of the residents are students at the University of North Texas and Texas Woman's University (Dkt. #1 at ¶¶ 15, 38; Dkt. #18 at p. 15–22). These allegations alone, however, do not suffice to make The Republic conduct attributable to the state. The Complaint fails to allege that the State of Texas, the University of North Texas, or Texas Women's University, either through a regulation or policy, exercised coercive power or significantly encouraged The Republic to adopt its housing policy or to render specific housing decisions. *Blum v. Yaretsky*, 457 U.S. 991, 991 (1982) (holding that although the state regulated and subsidized the nursing homes, private parties, not state officials, made the administrative decisions; therefore the decisions could not be treated as state action.).

Notwithstanding the fact that the Complaint fails to allege the amount of financial support The Republic receives, the allegation that The Republic receives some financial support from the state is also insufficient to establish that The Republic's conduct is state action. As Plaintiff alluded to, in *Rendell-Baker v. Kohn*, the Supreme Court held that although a school received between 90% and 99% of its operating costs from the government, the school director's conduct was not state action. 457 U.S. 830, 836 (1982); *see also Blum v. Yaretsky*, 457 U.S. at 1011 (although the state subsidized operating costs for the nursing homes and paid medical expenses for more than 90% of the homes' patients, the state funding did not transform the private conduct into state action). Furthermore, Plaintiff alleges no additional facts to establish what information led her to believe that The Republic receives federal funds and is state and local government housing.

Without state action, Plaintiff has no § 1983 claim. Therefore, Plaintiff's claim is dismissed with prejudice.

*Texas Civil Rights Act*

The Texas Civil Rights Act prohibits discriminatory behavior and declares persons with disabilities have the same right as persons without to the full use and enjoyment of any public facility in the state. Tex. Hum. Res. Code Ann. § 121.003(a). Furthermore, persons with disabilities shall be entitled to full and equal access, similar to others in the public, "to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law and applicable alike to all persons." Tex. Hum. Res. Code Ann. § 121.003(g). The Texas Civil Rights Act defines "public facility" to include:

> [A] street, highway, sidewalk, walkway, common carrier, airplane, motor vehicle, railroad train, motor bus, streetcar, boat or any other public conveyance or mode of transportation; a hotel, motel, or other place of lodging; a public building maintained by any unit or subdivision of the government; a retail business, commercial establishment, or office building to which the general public is invited; a college dormitory or other educational facility; a restaurant or other place where

9

food is offered for sale to the public; and any other place of public accommodation, amusement, convenience, or resort to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited.

Tex. Hum. Res. Code Ann. § 121.002(5). Furthermore, a "person with a disability" is a person who has: "(A) a mental or physical disability; (B) an intellectual or developmental disability; (C) a hearing impairment; (D) deafness; (E) a speech impairment; (F) a visual impairment; (G) post-traumatic stress disorder; or (H) any health impairment that requires special ambulatory devices or services." Tex. Hum. Res. Code Ann. § 121.002(4). Additionally, a "assistance animal" and "service animal" means "a canine that is specially trained or equipped to help a person with a disability and that is used by a person with a disability." Tex. Hum. Res. Code Ann. § 121.002(1).

Again, regardless if The Republic is a public facility, Plaintiff has not alleged sufficient facts that she is a person with a disability under the Texas Civil Rights Act. Tex. Hum. Res. Code Ann. §121.002(4). Furthermore, Plaintiff has not pleaded that her emotional support dog, is a service animal within the meaning of the Texas Civil Rights Act. Nowhere in the pleadings does Plaintiff allege that her dog was "specially trained or equipped" to help her with a disability. *See Johnson v. Gambrinus Co.*, No. V-94-040, 1995 WL 564353, at *4 (S.D. Tex. June 8, 1995) (holding Defendants did not violate Texas Civil Rights Act by denying dog access to its facilities because Plaintiff did not assert dog had the required training). Thus, Plaintiff's cause of action under the Texas Civil Rights Act is dismissed with prejudice.

*Americans with Disabilities Act*

Title II of the Americans with Disabilities Act ("ADA") requires a plaintiff to show: "(1) that [s]he has a qualifying disability; (2) that [s]he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reasons of h[er] disability." *Hale*

*v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Title II of the ADA focuses on "disability discrimination in the provision of public services." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). The ADA defines "public entity" as "(A) any State or local government; (B) any department agency special purpose district, or other instrumentality of a State or States or local government; and (3) the National Railroad Passenger Corporation, and any commuter authority . . . ." 42 U.S.C. § 12131(1).

A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Furthermore, a "service animal" is defined as one that is "individually trained to do work or perform tasks of benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 C.F.R. § 35.104. A public entity is allowed to make two inquiries in regard to service animals: if the animal is required because of a disability and what work or task the animal has been trained to perform. 28 C.F.R. § 35.136 (f).

As discussed above, Plaintiff has not alleged any facts displaying what her disability is or how her disability substantially limits one of her major life activities. *See Hale*, 642 F.3d at 500. Even assuming that Plaintiff sufficiently pleaded that she had a qualified disability, Plaintiff fails to allege facts to support that The Republic is a public entity. The Republic is a private entity and despite alleging that The Republic receives federal and state funding and provides local and state government housing, Plaintiff's theory of joint participation between The Republic, the University

11

of North Texas and Texas Woman's University is unavailing, and there are no additional facts to support that The Republic is in fact state or local government housing.

Lastly, it appears that Plaintiff claims that her dog serves as an emotional support animal. In any event, emotional support or comfort animals do not qualify as service animals under the ADA. "An animal that simply provides comfort or reassurance is equivalent to a household pet, and does not qualify as a service animal under the ADA." *Rose v. Springfield-Green Cnty. Health Dep't*, 668 F. Supp. 2d 1206, 1215 (W.D. Mo. 2009) (quoting *Baugher v. City of Ellensburg*, No. CV-06-3026, 2007 WL 858627, at *5 (E.D. Wash. Mar. 19, 2007)). The ADA's regulations provide that "[t]he crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition." 28 C.F.R. § 36.104. Accordingly, because comfort animals do not qualify for protection, Plaintiff was required to plead facts sufficient to show her dog qualifies as a service animal on some other basis. Again, Plaintiff fails. Plaintiff's cause of action under the ADA is dismissed with prejudice.

*Rehabilitation Act of 1973*

Section 504 of the Rehabilitation Act "provides that no otherwise qualified handicapped individual in the United States shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial Assistance." 29 U.S.C. § 794 (a); *Lightbourn v. County of El Paso, Tex.,* 118 F.3d 421, 426 (5th Cir. 1997). The Rehabilitation Act is operationally identical to the ADA in that both statutes address discrimination against those with disabilities, but, "while the ADA is limited to public entities, including private employers, the Rehabilitation Act extends to programs or activities that, though private, receive federal funding." *Burroughs v. Shared Hous.*

*Ctr.*, No. 3:15-CV-333-N-BN, 2015 WL 4077216, at *6 (N.D. Tex. June 17, 2015), *report and recommendation adopted,* No. 3:15-CV-333-N, 2015 WL 4089756 (N.D. Tex. July 6, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).

The Rehabilitation Act and the ADA are judged under the same legal standard, and the same remedies are available. *Kemp*, 610 F.3d at 234 (citing *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)) "Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the [Rehabilitation Act]." *Id* (citing *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 n.4 (5th Cir. 1995). However, the definition of service animal applicable to the ADA does not apply sections 501, 503, or 504 of the Rehabilitation Act. 28 C.F.R. § 35.103 (noting the inapplicability of Title V to the Rehabilitation Act). Thus, emotional support animals are not excluded from a Section 504 of the Rehabilitation Act claim. *Velzen v. Grand Valley State University*, 902 F.Supp. 2d 1038, 1047 (W.D. Mich. 2012).

Although Plaintiff alleges that The Republic receives federal funding, and under the Rehabilitation Act an emotional support animal would be protected, her complaint fails for the same reasons her ADA claim failed: no facts nor any other allegations that would give rise to an assumption that a disability substantially limits a major life activity. Plaintiff's cause of action under the Rehabilitation Act is dismissed with prejudice.

*Texas Fair Debt Collection Practices Act*

Plaintiff alleges violations of the Texas Fair Debt Collection Practices Act ("TDCA"). Tex. Fin. Code Ann. § 392.001, et seq. Plaintiff claims that Defendants misrepresented the amounts allegedly owed by Plaintiff, never gave Plaintiff the Community Policies or Pet Policy yet proceeded to fine and send violation notices to Plaintiff pursuant to the policies, and attempted to

13

collect a debt not authorized by the Housing Agreement in violation of Tex. Fin. Code Ann. §§ 392.101, 392.202, and 392.301(a)(3).

In order to state a claim under the TDCA, Plaintiff must show: (1) the debt at issue is a consumer debt; (2) Defendants are debt collectors within the meaning of the TDCA; (3) Defendants committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against Plaintiff; and (5) Plaintiff was injured as result of Defendants' wrongful act. *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013).

Section 392.304(a)(8) states, "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt." Tex. Fin. Code Ann. § 392.304(a)(8). Section §392.303(a)(2) prohibits a debt collector from using unfair or unconscionable means including "collecting or attempting to collect . . . a charge, fee, or expense incidental to the obligation unless the . . . incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code Ann. § 392.303(a)(2). The TDCA does not, however, prevent a debt collector from "threatening to institute civil lawsuits or other judicial proceedings to collect a consumer debt." Tex. Fin. Code Ann. § 392.301(b)(2).

Plaintiff has alleged no facts that Defendants misrepresented the character, extent, or amount of a consumer debt, nor that Defendants used any false representation or deceptive means to collect a debt. Plaintiff further fails to offer facts of charges unauthorized by the Housing Agreement. Defendants sent Plaintiff a notice, which stated that Plaintiff was subject to a $200 fee for continuing to keep an unregistered and disruptive pet on the premises in violation of the

Housing Agreement. Then, on December 9, 2016, Defendants sent Plaintiff an email notifying her of her final balance, its due date, and the potential remedies in the event of nonpayment.

No communication or demand sent by Defendants misrepresented the amount owed pursuant to the Housing Agreement. Furthermore, Defendants' acts of requesting payment of rent in full is not unfair or unconscionable. *See Sgroe*, 941 F. Supp. 2d at 744 (holding that no unfair or unconscionable methods had been used to collect debt after telling the plaintiff they were in default and foreclosing). Lastly, Plaintiff presented no facts of any alleged damages under the TDCA. Therefore, Plaintiff's claims under the TDCA are dismissed with prejudice.

*Texas Deceptive Trade Practices Act*

To state a claim under the Texas Deceptive Trade Practices Act ("DTPA"), a plaintiff must show: "(1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant violated a specific provision of the DTPA; and (4) the defendant's violation is a producing cause of plaintiff's damages." *Henry v. CitiMortgage, Inc.*, No. 4:11-CV-83, 2011 WL 2261166, at *6 (E.D. Tex. May 10, 2011) (citing Tex. Bus. & Com. Code Ann. §§ 17.41–17.63); *see Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). In federal courts, claims under the Texas Deceptive Trade Practices Act are "subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 951 (S.D. Tex. 2016) (citing *Omni USA, Inc., v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 836 (S.D. Tex. 2011)). Rule 9(b) requires a plaintiff to "plead the 'who, what, when, where, and how' of fraud." *Lopez,* 197 F. Supp. 3d at 951(quoting *Williams v. Bell Helicopter Textron, Inc.,* 417 F.3d 450, 453 (5th Cir. 2005)).

The purpose of the DTPA is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and

15

economical procedures to secure such protection." Tex. Bus. & Com. Code Ann. § 17.44(a). In order to be a consumer, one must be an individual "who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4). To prove an unconscionable action or course of action, a plaintiff must show that that the defendant took advantage of her lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *Brittan Comm'ns. Intern. Corp. v. Se. Bell Tel. Co.*, 313 F.3d 899, 906 (5th Cir. 2002) (citing Tex. Bus. & Com. Code Ann. § 17.45(5)).

Plaintiff has not pleaded how Defendants engaged in unconscionable action or course of action, nor how they engaged in false, misleading or deceptive acts or practices. Nowhere in the pleadings does Plaintiff provide facts to render the DTPA claim plausible. *See Iqbal*, 556 U.S. at 679. Therefore, Plaintiff's cause of action under the DTPA is dismissed with prejudice.

*Negligence*

A negligent hiring and management claim in Texas requires: "(1) an employee of the defendant committed an actionable tort against the plaintiff, (2) the plaintiff suffered damages as a result of the employee's foreseeable misconduct, (3) the employer was negligent in hiring or supervising the employee, and (4) the employee's misconduct would not have occurred but for the employer's negligence." *Eure v. Sage Corp.*, 61 F. Supp. 3d 651, 667 (W.D. Tex. 2014) (citing *Ayres v. Parker*, 5:12-CV-621-XR, 2013 WL 4048328, at *18 (W.D. Tex. July, 29, 2013)). Plaintiff must show that "the defendant knew or should have known that a *foreseeable* harm would eventually befall the victim." *McDorman ex rel. Connelly v. Texas-Cola Leasing Co. LP, LLP*, 288 F. Supp. 2d 796, 804 (N.D. Tex. 2003) (*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 526 (Tex. 1990)) (emphasis in original).

16

Plaintiff fails to plead facts that bring her claims of negligence above a conclusory level. Rather, she simply states legal conclusions saying that Defendants' negligently trained, hired, and supervised their employees "regarding the requirements of federal and state fair housing laws" (Dkt. #1 ¶ 74). *See Schakosky v. Client Services, Inc.*, 634 F. Supp. 2d 732, 738–39 (E.D. Tex. 2007) (holding that plaintiff failed to allege any facts to support his negligent hiring or supervision claims, but rather regurgitated legal conclusions). Therefore, Plaintiff's negligence claim is dismissed with prejudice.

*Constructive Eviction*

Constructive eviction requires: "(1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises; (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises; (3) the act permanently deprives the tenant of the use and enjoyment of the premise; and (4) the tenant abandons the premises within reasonable time after the commission of the act." *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ).

However, notice of eviction followed by vacating the premises does not qualify as abandonment for a claim of constructive eviction. *Lowe v. UHF Magnolia Trace LP*, No. 3:14-CV-1460-M, 2015 WL 9690254, at *4 (N.D. Tex. Dec. 10, 2015); *Quitta v. Fossati*, 808 S.W.2d 636, 643 (Tex. App.—Corpus Christi 1991, writ denied) ("[O]ur courts have repeatedly held that a mere notice to quit, followed by vacation of the premises by the tenant, does not constitute a constructive eviction, for there must be some additional feature, such as harassing incidents disturbing to the tenant's peaceful possession and occurring on the property; and, that if the tenant moves out without protest, there is no eviction.").

Nothing in the pleadings suggests that Plaintiff abandoned the property, but to the contrary, Plaintiff was evicted in accordance with Texas law. Plaintiff specifically pleaded that due to Defendants' notice to vacate, she abandoned the property. Plaintiff's constructive eviction claim is dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. #3) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SIGNED this 17th day of October, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE